UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

FIFTY-SIX HOPE ROAD MUSIC, LTD., and ZION ROOTSWEAR, LLC,

    Plaintiffs,

v.

A.V.E.L.A., INC., et al.,

    Defendants.

2:08-CV-00105-PMP-PAL

ORDER

        Presently before the Court is Plaintiffs' Motion for Attorneys' Fees (Doc. #390), filed on July 17, 2012. Defendant Jem Sportswear, Inc. ("Jem") filed an Opposition (Doc. #397) on August 3, 2012. Defendants A.V.E.L.A., Inc. ("Avela"); X One X Movie Archive, Inc. ("X One X"); and Leo Valencia ("Valencia"), collectively the "Avela Defendants," and Defendant Central Mills, Inc. ("Freeze") filed an Opposition (Doc. #400) on August 3, 2012. Plaintiffs filed Replies (Doc. #404, #405) on August 13, 2012.

        The parties are familiar with the facts of this case, and the Court will not repeat them here except where necessary. A court may award attorney's fees to the prevailing party under the Lanham Act in "exceptional cases." 15 U.S.C. § 1117(a). Plaintiffs now move for attorney's fees in this Lanham Act case, arguing they are prevailing parties, the case is exceptional, and they therefore are entitled to over $2 million in attorney's fees which cannot be apportioned between Lanham Act and non-Lanham Act claims. The Avela Defendants and Freeze contend Plaintiffs are not prevailing parties because Plaintiffs lost three out of five claims. All Defendants argue the case is not exceptional, and, even if

it is, fees should not be awarded or should be apportioned to reflect billing only for the one successful Lanham Act claim. Additionally, Defendants argue Plaintiffs' requested fees are not reasonable.

**A. Prevailing Party Status**

Plaintiffs contend they are prevailing parties in this action, as they obtained a jury verdict in their favor. Additionally, Plaintiffs contend the Court adopted the jury's findings and entered judgment for damages and a permanent injunction against Defendants. Defendant Jem does not dispute that Plaintiffs are prevailing parties. The Avela Defendants and Freeze contend Plaintiffs are not prevailing parties because Plaintiffs lost three of their five claims.

Only a prevailing party is entitled to attorney's fees under the Lanham Act. 15 U.S.C. § 1117(a). Federal courts consistently interpret the term "prevailing party" across various federal statutes containing a similar fee-shifting provision as the Lanham Act. See Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 603 n.4 (2001); Klamath Siskiyou Wildlands Ctr. v. U.S. Bureau of Land Mgmt., 589 F.3d 1027, 1030 (9th Cir. 2009). A party prevails for purposes of an attorney's fee award if the party has "achieved a material alteration in the legal relationship of the parties that is judicially sanctioned." Klamath, 589 F.3d at 1030 (quotation omitted). "The material alteration in the legal relationship of the parties must be relief that the would-be prevailing party sought . . . ." Id.

"The threshold for sufficient relief to confer prevailing party status is not high." Saint John's Organic Farm v. Gem Cnty. Mosquito Abatement Dist., 574 F.3d 1054, 1059 (9th Cir. 2009). Even an award of nominal damages will suffice to confer prevailing party status, although the "nature and quality of relief may affect the amount of the fees awarded." Id. A party need not prevail on all of its claims to be the prevailing party. San Diego Police Officers' Ass'n v. San Diego City Emps.' Ret. Sys., 568 F.3d 725, 741 (9th

Cir. 2009).

Plaintiffs are prevailing parties in this action. Plaintiffs sought both damages and permanent injunctive relief in their Complaint. (Compl. (Doc. #1) at 10-11.) The jury returned a verdict in Plaintiffs' favor on one of their Lanham Act claims. (Jury Verdict (Doc. #301).) The Court agreed with and adopted the jury's findings, made additional findings regarding the propriety of injunctive relief on the Lanham Act claim, and entered a permanent injunction against all Defendants. (Partial Monetary J. & Permanent Inj. (Doc. #307).) The Court also awarded to Plaintiffs each Defendant's net profits based on Plaintiffs' Lanham Act claim, and monetary judgments were entered against Defendants as a result. (Order (Doc. #385); J. (Doc. #386).) Plaintiffs therefore have obtained judicially sanctioned material alterations in their legal relationships with all Defendants, through both monetary judgments and permanent injunctive relief. The fact that Plaintiffs prevailed on only two of their five claims, and on only one of their Lanham Act claims, may affect the amount of any attorney's fee award, but it does not deprive Plaintiffs of prevailing party status.

**B. Exceptional**

Plaintiffs argue this case is exceptional because the jury determined Defendants acted willfully, and the evidence at trial supports that conclusion. Specifically, Plaintiffs argue that it was common knowledge in the industry that Plaintiffs owned the rights to Bob Marley's ("Marley") persona, yet Defendants nevertheless sold Marley products without Plaintiffs' permission even after other retailers questioned Defendants' rights to do so. Plaintiffs also contend that Valencia unsuccessfully attempted to obtain a license from Plaintiffs, conspired with Roberto Rabanne ("Rabanne") to falsify evidence in this case, admitted that he lied at his deposition, and told Rabanne he would flood the market with Marley merchandise in response to Plaintiffs' lawsuit against him. Plaintiffs contend Avela and Jem conspired to use Marley photos that were not taken by Rabanne and made a Marley

3

1 t-shirt that was nearly identical to one sold by Plaintiffs.  Plaintiffs further assert that Jem
2 and Freeze were at a minimum willfully blind to their infringing activity, as neither
3 conducted any due diligence and instead relied on the indemnity provision of their licensing
4 agreements with Avela.  Plaintiffs also argue Avela did not prove it relied on its attorney's
5 advice.  Finally, Plaintiffs contend the jury's determination that Avela intentionally
6 interfered with Plaintiffs' prospective business relationships shows Avela acted maliciously.

7       Defendant Jem responds that the case is not exceptional as to Jem, as Jem did not
8 engage in any egregious conduct sufficient to warrant an award of attorney's fees against it.
9 Jem contends that it had no reason to investigate Avela's right to use the Marley images,
10 that inquiry from two retailers was not sufficient to put Jem on notice, and Jem would not
11 have discovered anything even if it had investigated because Plaintiffs had no trademarks in
12 any Marley image or song lyrics, no copyrights on the Rabanne images, and no Nevada
13 publicity rights.  Jem contends that reliance on the indemnity agreement is standard industry
14 practice, and thus Jem's conduct is not exceptional.  Finally, Jem contends that there is no
15 evidence that Jem knew about Plaintiffs or that Jem used any Marley image not licensed
16 through Avela.

17       The Avela Defendants argue this case is not exceptional because the Avela
18 Defendants' use of the Marley images was based on a reasonable interpretation of existing
19 law, as the viability of a false endorsement claim by a deceased celebrity was and is unclear.
20 The Avela Defendants also argue a jury finding of willfulness does not in and of itself
21 support a finding that a case is exceptional because that is a question of law for the Court.
22 The Avela Defendants contend the evidence does not support a finding the case is
23 exceptional because Plaintiffs did not hold all rights to all Marley images, Plaintiffs
24 misconstrue Valencia's efforts to get a license to use the trademark of Marley's name rather
25 than his image, Jem and Avela did not conspire to create a t-shirt similar to one Plaintiffs
26 were selling, and Avela's failure to prove a defense does not amount to willfulness.  The

Avela Defendants also contend the elements of an interference with prospective business relationships do not show the requisite willful, fraudulent, or malicious behavior required to find the case exceptional. Defendant Freeze argues that it did nothing more than obtain and rely upon a license from Avela, and its purported failure to conduct due diligence is not sufficiently egregious to support a finding the case is exceptional.

To award attorney's fees to the prevailing party under the Lanham Act, the case must be "exceptional." 15 U.S.C. § 1117(a). The Act does not define what constitutes an "exceptional" case, but generally a case is exceptional "when the infringement is malicious, fraudulent, deliberate or willful." Gracie v. Gracie, 217 F.3d 1060, 1068 (9th Cir. 2000) (quotation omitted). Additionally, the non-prevailing party's litigation conduct may support a finding that the case is exceptional. See Secalt S.A. v. Wuxi Shenxi Constr. Mach. Co., 668 F.3d 677, 687 (9th Cir. 2012); Cairns v. Franklin Mint Co., 292 F.3d 1139, 1156 (9th Cir. 2002).

While a defendant's egregious conduct may support a finding of exceptionality, egregiousness is not required. TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 833 (9th Cir. 2011). "The issue is not necessarily one of bad faith: willful or deliberate infringement will suffice." Earthquake Sound Corp. v. Bumper Indus., 352 F.3d 1210, 1218 (9th Cir. 2003). A district court's finding of exceptionality may "flow[] quite naturally from the jury's finding of willful infringement and the legal standard for 'exceptional cases' under § 1117." Gracie, 217 F.3d at 1068. However, whether a case is exceptional is a question of law for the Court, not the jury. Secalt S.A., 668 F.3d at 687; Watec Co. v. Liu, 403 F.3d 645, 656-57 (9th Cir. 2005).

The jury was instructed on willfulness as follows:

> Willful unfair competition carries a connotation of a deliberate intent to deceive. You therefore must determine whether each Defendant used Bob Marley's persona or identity intentionally, knowing it was likely to cause confusion, or to cause mistake, or to deceive as to the

5

> affiliation, connection, or association between Plaintiffs and Defendants, or to cause confusion as to Plaintiffs' participation in the origin, sponsorship, or approval of Defendants' goods or commercial activities with Plaintiffs.
> A Defendant's knowledge may be proven by showing that Defendant was willfully blind. A Defendant is willfully blind if it suspects wrongdoing and deliberately fails to investigate or inquire further. Willful blindness may be inferred from the facts and circumstances of the case.

(Jury Instructions (Doc #294) at 20.) The jury found each Defendant acted willfully. (Jury Verdict (Doc. #301) at 4.) The evidence was sufficient to support the jury's finding of willfulness as to all Defendants. The Court agreed with and adopted the jury's findings and awarded Plaintiffs net profits Defendants derived through the willful infringement. (Order (Doc. #385).) Given that the infringement was willful, this case is exceptional for purposes of an attorney's fee award as to each Defendant.

### C. Propriety of Fees Even if Exceptional

The Court is not compelled to award attorney's fees even if the case is exceptional. Gracie, 217 F.3d at 1071. Rather, whether to award attorney's fees lies within the Court's discretion. 15 U.S.C. § 1117(a) (the court "may" award fees); Cairns, 292 F.3d at 1156; Gracie, 217 F.3d at 1071. Among the non-exclusive factors the Court may consider in determining whether to award fees are: the nature and extent of the relief obtained, the unlawfulness of each defendant's conduct, whether the relevant area of law is unclear, whether infringement or willfulness was a close question, whether each defendant intended to deceive or confuse the public, and whether the plaintiff suffered actual damage. See TrafficSchool.com, Inc., 653 F.3d at 832; Saint John's Organic Farm, 574 F.3d at 1059-60; Tamko Roofing Prods., Inc. v. Ideal Roofing Co., 282 F.3d 23, 32-33 (1st Cir. 2002).

Here, the evidence was sufficient to support the jury's finding of willfulness as to all Defendants. However, the Court previously has noted that the evidence that Jem "acted

with an intent to deceive consumers or that JEM caused actual money or reputational damages to Plaintiffs or to the Marley persona is weak." (Order (Doc. #385) at 2.) Plaintiffs prevailed on only two of their five claims against Jem, and on only one Lanham Act claim. Plaintiffs already have obtained substantial relief in the form of a permanent injunction and a profits award as against Jem. Given Jem's relatively lower culpability as compared to Avela and Valencia, some of the novel legal questions presented in this case, the weak evidence that Jem intended to deceive or confuse the public, and the weak evidence that Jem's conduct caused Plaintiffs actual damage, the Court, in its discretion, will decline to award attorney's fees against Defendant Jem.

For similar reasons, the Court, in its discretion, will decline to award attorney's fees against Defendant Freeze. The evidence shows more culpable conduct on the part of Freeze as compared to Jem, as Freeze sold Marley products after Plaintiffs contacted Freeze and advised that the Marley family owned the Marley rights, and Avela did not have a license to use Marley's name or likeness. (Pls.' Mot. for Attorney's Fees (Doc. #390), Appx. of Trial Test., Ex. 1 at 231-34, Ex. 13 at 132.) Additionally, the testimony showed Freeze continued to sell Marley products even after receiving a cease and desist letter. (Id., Ex. 1 at 231-34.) Freeze relied on its indemnity agreement with Avela, and conducted no independent investigation as to whether Valencia had a license to use the Marley images despite these contacts from Plaintiffs questioning Valencia's rights to the images. (Id., Ex. 13 at 140.)

Although the evidence supports a finding that Freeze acted with a more culpable intent than Jem, the evidence that Freeze caused actual money or reputational damages to Plaintiffs or to the Marley persona is much weaker. Freeze generated only $64,029 in gross sales of Marley product, and the Court already has ordered Freeze to disgorge the modest $19,246.54 in profits Freeze reaped from its infringing activity. Additionally, the Court has imposed a permanent injunction against Freeze. As with Defendant Jem, Plaintiffs

7

prevailed on only two of their five claims against Freeze, and on only one Lanham Act claim.  Given the above factors, as well as some of the novel legal questions presented in this case, the Court, in its discretion, will decline to award attorney's fees against Defendant Freeze.

The Court, in its discretion, reaches a different conclusion with respect to the Avela Defendants.  As to these Defendants, the evidence of bad faith supports an attorney's fee award.  Among other evidence of intent, testimony was presented that these Defendants sold Marley products despite knowing Plaintiffs owned the license for Marley and despite knowing that Rabanne had rights only to reproduce his Marley photographs as photographs, not on apparel.  (Id., Ex. 7 at 192, Ex. 8 at 18-19, Ex. 9 at 224-27, 231, 244-50.) Additionally, Rabanne testified that Valencia dictated an email for Rabanne to write which was not truthful regarding Rabanne's rights to sell Marley merchandise; that Valencia asked Rabanne to backdate their agreement to strengthen Valencia's position; that Valencia asked Rabanne to delete emails that might hurt Valencia's position in this dispute; and that Valencia told Rabanne he was going to "flood the market" and use the proceeds to fund his defense against Plaintiffs' lawsuit.  (Id., Ex. 8 at 46-59, 66-70, 83.)  The Court therefore will grant an attorney's fee award against the Avela Defendants.

### D. Reasonableness of the Award

Plaintiffs request $2,306,427.70 in attorney's fees.  Plaintiffs contend this amount is reasonable because Plaintiffs obtained exceptional results and the lodestar amount reflects the substantial time and labor involved in this complex matter, the skill of counsel, the customary fee, and awards in similar cases.  Plaintiffs contend that although they prevailed on only one Lanham Act claim which entitles them to fees, all of the claims are so inextricably intertwined based on a common core of facts that apportioning fees among the various claims is impossible, and Plaintiffs therefore are entitled to all fees incurred.

///

The Avela Defendants contend the fee is unreasonable because Plaintiffs prevailed on only one claim entitling them to attorney's fees and the fees must be apportioned accordingly, and Plaintiffs already have obtained substantial recovery. The Avela Defendants further argue that Plaintiffs expended an unreasonable amount of hours on the case, Plaintiffs are attempting to charge for unsuccessful claims and motions, and Plaintiffs' records are presented in block billing format making it difficult to apportion fees to the Lanham Act claim.

To calculate a reasonable attorney's fee, the Court first must calculate the "lodestar" by "multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." Caudle v. Bristow Optical Co., 224 F.3d 1014, 1028 (9th Cir. 2000) (quotation omitted). In determining reasonableness, the Court considers the "results obtained by the prevailing litigant," including whether the plaintiff prevailed on only some claims and the nature and extent of the relief awarded. Id. at 1028-29; Hensley v. Eckerhart, 461 U.S. 424, 434 (1983).

In evaluating the results obtained, the Court should be mindful that while in some cases the claims upon which the plaintiff prevailed may be discrete from those on which the plaintiff did not prevail, "[i]n other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories." Hensley, 461 U.S. at 435. In cases where the claims for relief are related, "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." Id. In such cases, the Court evaluates "the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." Id. This attempt to apportion fees in relation to results obtained is particularly appropriate in Lanham Act claims, because a prevailing party "cannot recover legal fees incurred in litigating non-Lanham Act claims unless the Lanham Act claims and non-Lanham Act claims are so intertwined that it is impossible to differentiate between

work done on claims." Gracie, 217 F.3d at 1069 (emphasis and quotation omitted). Even if "an exact apportionment" is impossible, the Court must "make some attempt to adjust the fee award in an effort to reflect an apportionment, . . . unless the court finds the claims are so inextricably intertwined that even an estimated adjustment would be meaningless." Id. at 1069-70.

After computing the lodestar, the Court determines whether additional considerations support raising or lowering the fee award. Specifically, the Court considers:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir. 1975). The lodestar figure presumptively is reasonable, and adjustments of the lodestar are "proper only in 'rare' and 'exceptional' cases, supported by specific evidence on the record and detailed findings by the district court." Jordan v. Multnomah Cnty., 815 F.2d 1258, 1262 (9th Cir. 1987).

The party seeking fees bears the burden of establishing entitlement to fees and submitting supporting evidence. Hensley, 461 U.S. at 433, 437. The Court may reduce an award based on inadequate documentation of hours or rates requested. Id. at 433.

Here, Plaintiffs have presented evidence regarding the reasonableness of their rates, and the Avela Defendants do not dispute the rates are reasonable. The Court therefore will adopt the hourly rates as set forth in Plaintiffs' submission.

However, the parties dispute the reasonableness of the time expended, and, in the context of this dispute, disagree as to whether apportionment is appropriate. As an initial matter, the Court disagrees with the Avela Defendants' position that the fees are grossly

disproportionate to the overall results obtained.  Even though Plaintiffs prevailed on only two of five claims, and on only one Lanham Act claim, Plaintiffs obtained substantial monetary judgments.  Additionally, Plaintiffs obtained a permanent injunction and vindicated their rights in the Marley intellectual property, relief for which the Avela Defendants apparently, and erroneously, accord no value.

On the other hand, the Court does not completely agree with Plaintiffs that apportionment between the successful Lanham Act claim and the other claims is impossible.  Plaintiff's claims for relief involve a common core of facts, and thus much of Plaintiffs' counsels' time undoubtedly was devoted to the litigation as a whole.  Discovery, in particular, is not amenable to apportionment among the various claims, as the factual predicate for the various claims is based on a common core of facts.  However, the legal theories and various issues that arose with respect to the claims were quite distinct, as demonstrated by the summary judgment briefing and the Court's Order on summary judgment.  Even the two Lanham Act claims raised substantially different legal issues.  Additionally, following summary judgment and the Court's Oder extinguishing Plaintiffs' Nevada publicity rights claim, only two claims remained for trial, only one of which was a Lanham Act case.  Consequently, although an exact apportionment is impossible, the Court will apportion Plaintiffs' claims.

Plaintiffs concede that $31,486.60 is identifiable as fees incurred solely in relation to the unsuccessful, non-Lanham Act claim for Nevada publicity rights.  (Pls.' Reply (Doc. #405) at 17.)  The Court therefore will exclude these fees.

As for the remainder of Plaintiffs' fees, Plaintiffs' billing records are block billed and redacted, making it impossible for the Court to apportion based on any particular bill entries.  (See Pls.' Mot. for Attorney's Fees (Doc. #390), Pietrini Decl. & Exs.)  Consequently, the Court will apply a percentage reduction to apportion.

///

Plaintiffs originally brought five claims. On February 25, 2010, the Court granted Defendants' motions for summary judgment on two of the five claims, leaving claims for Lanham Act unfair competition, Nevada publicity rights, and intentional interference with prospective business relationships. (Order (Doc. #145).) Plaintiffs later brought to the Court's attention evidence that warranted entering summary judgment in Defendants' favor on the Nevada publicity rights claim. (Order (Doc. #224).) Consequently, as of November 2, 2010, only two claims remained: unfair competition under the Lanham Act and intentional interference.

Because the claims share a common core of facts, the Court does not find that a simple division of the hours by five to reflect the five independent claims is a fair apportionment leading up to the summary judgment proceedings, as the Avela Defendants propose. Most of the fees related to discovery and much of the other work through summary judgment would have been incurred as part of counsels' pursuit of the overall litigation. Although the Court cannot put an exact percentage on it, based on the Court's familiarity with the issues in the case and the relative time and resources devoted to the various claims in filings and arguments before the Court, the Court will apportion sixty percent of the hours charged through November 2, 2010 as reasonably expended on the case as a whole and the successful Lanham Act claim specifically.

Following November 2, 2010, only two claims remained. However, the Court does not consider a fifty-fifty split following these rulings a fair apportionment of the two remaining claims that went to trial. At trial, the unfair competition claim predominated both in terms of evidence presented and arguments made regarding jury instructions and related issues. The Court therefore will apportion seventy percent of the hours charged from November 2, 2010 through the end of the case as reasonably expended on the successful pursuit of the Lanham Act claim.

///

This is not the rare case where any of the Kern factors warrant raising or lowering the adjusted lodestar. The time and labor required are adequately reflected in the lodestar, as is the customary fee which the Avela Defendants did not dispute. Although the Avela Defendants challenge as unreasonable the number of hours expended, some of those issues adequately are addressed by the apportionment between Plaintiffs' prevailing claim and non-prevailing claims. Further, the Avela Defendants' challenge to Mr. Ervin's billing does not warrant a reduction. There were two Plaintiffs in this action, and each was entitled to be represented by counsel. The Avela Defendants' preference that Plaintiffs use only Plaintiff Fifty-Six Hope Road Music, Ltd.'s lead counsel at trial does not render Mr. Ervin's participation at trial on behalf of his client, Plaintiff Zion Rootswear, LLC, unreasonable. Moreover, Mr. Ervin did not sit passively at counsel table throughout the trial; he questioned witnesses and participated in settling jury instructions.

Although novel questions were raised in this litigation, some of those novel questions related to legal issues distinct from the Lanham Act claim on which Plaintiffs prevailed, such as the application of the Nevada publicity rights statute and whether a celebrity's picture is the equivalent of a word trademark on the celebrity's name. The Lanham Act unfair competition claim also involved some novel issues, although there was guiding precedent, as reflected in the Court's summary judgment Order. To the extent the case raised novel issues on the unfair competition claim, Plaintiffs are adequately compensated for their research and drafting time as reflected in the lodestar.

The skill needed to perform the legal service properly and the experience, reputation, and ability of Plaintiffs' counsel support the lodestar award. The Lanham Act unfair competition claim required skilled and experienced attorneys in the area of intellectual property and the Lanham Act, and Plaintiffs' counsel have many years of relevant experience between them. Counsel also have had an attorney-client relationship with Plaintiffs for several years. While Plaintiffs' counsel performed ably and obtained

13

favorable results for their clients, an upward adjustment is not warranted as the adjusted lodestar and counsels' hourly rates adequately compensate for counsels' skill and experience.

The preclusion of other employment by Plaintiffs' counsel due to acceptance of the case also supports the awarded lodestar, as the case has been vigorously litigated over a period of several years.  However, the case was not so consuming as to warrant enhancing the fee award.  Finally, awards in similar cases supports the lodestar.  As set forth in Plaintiffs' Motion, other intellectual property cases garner substantial fees, and fees often may exceed the monetary recovery because the plaintiff obtains other, less tangible benefits such as injunctive relief or vindication and protection of his or her intellectual property rights.  The factors of fixed or contingent fee arrangement, the time limitations imposed by the client or the circumstances, or the undesirability of the case are not relevant to this action.

The Court therefore will award an attorney's fee award in favor of Plaintiffs and against the Avela Defendants.  Plaintiffs shall submit a form of order in conformity with the Court's ruling within fifteen (15) days from the date of this Order.

IT IS THEREFORE ORDERED that Plaintiffs' Motion for Attorneys' Fees (Doc. #390) is hereby GRANTED in part and DENIED in part.  The Motion is denied as to Defendants Jem Sportswear, Inc. and Central Mills, Inc.  The Motion is granted as to Defendants A.V.E.L.A., Inc.; X One X Movie Archive, Inc.; and Leo Valencia to the extent more fully set forth in this Order.

///
///
///
///
///

IT IS FURTHER ORDERED that Plaintiffs shall prepare and file within fifteen (15) days from the date of this Order a proposed form of order consistent with the Court's instructions regarding which fees appropriately are included within the award.

DATED: January 14, 2013

_____
PHILIP M. PRO
United States District Judge